## EDMUND H. CLARK

*v.*

### NEW JERSEY POSTAL TELEGRAPH COMPANY.

[Decided June 17th, 1913.]

1. Specific performance will not be decreed in a case in which the decree cannot be enforced for want of ability of defendant to carry it out.

2. A contract binding a telegraph company for a valid consideration to issue to an individual a personal telegraph frank over all the lines of the company, though valid when made, is within Interstate Commerce act, February 4th, 1887 (*24 Stat. p. 379 ch. 104; U. S. Comp. Stat. 1901 p. 3154*), as amended by act June 29th, 1906 (*34 Stat. p. 584 ch. 3591; U. S. Comp. Stat. Supp. 1911 p. 1284*), prohibiting the issuance by carriers of passes, and including telegraph companies in the category, and the contract will not be specifically enforced.

3. A telegraph company is a common carrier of news and information, and is subject to legislation as such.

---

On final hearing on pleadings and proofs.

*Messrs. Parker & Van Gelder,* for the complainant.

*Messrs. Vredenburgh, Wall & Carey,* for the defendant.

WALKER, CHANCELLOR.

The bill in this case prayed for the specific performance of a contract made between the complainant and the New Jersey

Postal Telegraph Company to the end that that company and the Postal Telegraph-Cable Company of New Jersey or either of them might be decreed to issue to him a personal telegraph frank over all the lines of both companies.

On March 31st, 1891, the complainant owned and possessed certain telegraph poles, cross-arms and wires strung thereon in Long Branch, which he sold to the defendant, the New Jersey Postal Telegraph Company, by an agreement in writing of that date. Part of the consideration passing from the company to him was that he should have a personal telegraph frank over the lines of the New Jersey Postal Telegraph and the Postal Telegraph-Cable companies for messages to and from himself during the continuance of the agreement. No time limit was expressed in the agreement. It provided that Clark should deliver his line to the company for $1,700 in cash and the franking privilege mentioned, and that if the company should lease, sell, demise, make over, or in any way permit the Postal Telegraph-Cable Company to operate or control its property, the terms of the contract should continue in force in precisely the same manner with the Postal Telegraph-Cable Company, and the latter then should enjoy all the rights and privileges of the former company.

The New Jersey Postal Telegraph Company paid the complainant $1,700 in cash and he delivered to it all the line mentioned, and the New Jersey Postal Telegraph Company issued or caused to be issued to him by the Postal Telegraph-Cable Company of New Jersey a personal telegraph frank for messages, and he received the services provided for in the agreement until on or about February 28th, 1907, when his last frank expired, and since that time the Postal Telegraph-Cable Company of New Jersey, which had been issuing the franks, refused to issue any more of them.

The New Jersey Postal Telegraph Company, subsequently to the making of the agreement, sold and conveyed to the Postal Telegraph-Cable Company of New Jersey the line which it had acquired from complainant, and after taking over the same it, the Postal Telegraph-Cable Company of New Jersey, issued to complainant, as already stated, divers franks called for by the

terms of the agreement mentioned, from the date of the agreement (March 31st, 1891) up to February 28th, 1907.

The bill of complaint was amended by striking out the Postal Telegraph-Cable Company of New Jersey as a defendant, and the relief now prayed for is against the New Jersey Postal Telegraph Company only.

As the Postal Telegraph-Cable Company of New Jersey is the corporation now owning the line and from whom the frank must emanate, if it comes, a command that the New Jersey Postal Telegraph Company, with whom the contract was made, but who no longer owns the line, should issue the frank, would be nugatory. And, as I understand it, specific performance will not be decreed in a case in which the decree cannot be enforced for want of ability on the part of the defendant to carry it out. See *Pub. Serv. Corp.* v. *Hackensack Meadows Co., 72 N. J. Eq. (2 Buch.) 285,* and cases cited.

That is not all. There is another and an insuperable difficulty in the way of the complainant. It is the inhibition against the issuing of franks by telegraph companies.

Congress, on June 29th, 1906, amended the interstate commerce act by directing that no common carrier should directly or indirectly issue or cause to be issued any interstate free ticket, pass or transportation, except to certain specified persons, and it was held that the constitutional liberty of a citizen to make contracts was not infringed by this amendatory act, which rendered unenforceable a prior contract, valid when made, by which an interstate carrier agreed to issue annual passes for life in consideration of the release of a certain claim. *Louisville and Nashville Railroad Co.* v. *Mottley, 219 U. S. 467; 55 L. Ed. 297.*

By section 1 of the amendatory act (*U. S. Comp. Stat. Supp. 1911, p. 1284*), telegraph companies are included in the category of common carriers. That they are common carriers of news and information, and subject to legislation as such, I have no doubt. (See *37 Cyc. 1811.*)

Furthermore, by section 2 of the amendatory act (*p. 1286*) it is provided that no common carrier subject to the provisions of the act, after January 1st, 1907, shall issue or give any inter-

state free ticket, free pass, or free transportation, provided that the privilege of passes or franks shall not be prohibited to officers and certain others connected with telegraph, telephone and cable lines. The complainant does not fall within the excepted class.

The bill must be dismissed.